The first case on the call of the docket is Agenda No. 5, Case No. 131714, Anderson v. Smith. Are the attorneys for the appellate prepared to proceed? Yes, Your Honor. Please proceed, counsel. May it please the Court? My name is Dustin Clark. I represent the appellant, Mr. Nicholas Anderson. We have a limited amount of time, and we're talking about statutory interpretation today of an important statute, the Citizens Participation Act, which is designed to at least partially protect those who engage in petitioning activity before or to advance a government interest or activity from those who would use the judicial system to retaliate against them through what are known as SLAPs, or Strategic Lawsuits Against Public Participation. Counsel? Yes? Can we start with looking at the procedural posture of this matter? In this case, it's a little unique, I believe, in that we're not necessarily deciding whether or not this is a SLAP case. We're deciding what analysis we should apply. Is that correct? That is correct. The lower court in this case, in Skylar County, utilized the 1st Appellate District's analysis framework. As the 4th Appellate District pointed out, rightly so, as that was the controlling law at the time of that decision. An interlocutory appeal followed as a matter of permission, and that was granted by the 4th Appellate District. And at that proceeding, the 4th Appellate District introduced a new framework for the lower court to utilize to analyze whether or not Mr. Anderson's activities constituted a SLAP or not. So what happens if you win? What do we do? I think it's still to remand with instructions, but the instructions, if I win, if my position is advanced, would be we would move to trial. The procedural posture at the time it was appealed was subsequent to a motion for summary judgment, as well as a motion pursuant to the Citizens Participation Act. And both of those motions were denied. Those motions were brought by the defendant in this matter. So it would be to remand with instructions, but the instructions would be proceed to trial. If the defendant were successful, we would have to rewind the clock, so to speak, and return to an analysis. I think the instructions, if the defendant were successful, would have to be somewhat detailed and allow both the plaintiff and the defendant an opportunity to present argument, evidence, etc., under this altered framework. But I'm hopeful that the court will not remand with those instructions. But I do think just for as a backup, I think it would need to have those instructions rather than just moving straight to a decision by the Supreme Court. Mr. Clark, did the trial court provide the reasoning for denying the motion to dismiss under the CPA? No, they really didn't. Not in writing. The only time the court provided any kind of analysis of the CPA was at an earlier stage in the proceedings. A motion to dismiss in conjunction with a 619 motion was brought by the defendant. At that point, there was an oral decision that was rendered that did go through all three of the prongs, but really only the second prong of the Sandholm test was analyzed or was really in dispute at any point in this case. The court did go through it at that point, but it did make clear that further evidence could support the contention that Mr. Anderson's motives were purely retaliatory or that the case lacked merit, and that going to depositions and performing discovery could basically reveal that there was an element of either the malicious prosecution claim or the defamation claim that my client could meet on the objective side of it, or that Mr. Anderson's intent was purely subjective. Do you agree with the public court that the first prong of the Sandholm test is not in dispute here? I agree with that. It's clear that the petitioning activity of the defendant in this matter was directed at government intervention. The underlying case involved a CAFO, a hog confinement that was being constructed in Skylar County, and there was a... As part of that process, it's a bit of a facade in my opinion, the county board takes questions and answers and provides an advisory opinion to the Department of Natural Resources... Excuse me, the Department of Agriculture, but ultimately the decision whether or not a CAFO can or cannot be built is entirely in the discretion of the Department of Agriculture. Presumably, they take into account the county board's statements or opinion, but regardless, there was some type of government action that the defendant in this case was trying to affect through her speech activities. So yes, I do believe that it is applicable, or excuse me, that the first prong does not apply here, or at least it does apply, but it's not in dispute. We do have a bit of a unique situation here where this case came up, the 4th Appellate District put this new test, this purely subjective motives mini-trial as the methodology that they advance as a true representation of the legislative intent, which was obviously in contradiction with the 1st Appellate District's position, and then in August, the legislature and ultimately the governor signed amendments to this law, which... Is that of any concern to us in resolving this matter? Only to the extent, the strict answer is no. The defendant in this matter, the appellee raised it. It can be theoretically a lens into what the legislature intended in the original statute. I don't think it does here because the legislature's very explicit that the provisions of the amendments don't apply to this case or any case filed before January 1 of this year. So to the extent it's any kind of tea leaf, I actually think it points towards doing away with any kind of subjective component. If we're still going to have a balancing completed here between the rights of the petitioning party or the moving party and the right to petition the court for redress of wrongs, the second prong has always done all of the heavy lifting on that front. The first prong and the third prong, really all they do is determine whether or not the context of the speech is the context in which it is the type of speech that is to be protected, maybe. But the balancing between those two rights of the plaintiff and the moving party or the defendant is all done by the second prong. The Sandholm decision recognized that. It, I think, properly analyzes the statute in that it states that the legislature didn't say we were going to do away with the common law. We weren't creating an absolute immunity, which they could have done. The legislature absolutely could have done that. They didn't here. So we know Sandholm is the seminal case on this issue. Did the Fourth District in their decision, did they depart from Sandholm? Did they interpret that incorrectly? I believe they did. The Sandholm, the Fourth Appellate District, they took a quote that the Sandholm court used from an academic paper that said, I believe, something along the lines of 80 to 90 percent of the slap suits were decided in favor of the defendant. And by implication, that means 20 or 10 to 20 percent were decided in favor of the plaintiff. And they said, well, the court in Sandholm couldn't possibly have meant to apply a merits analysis because some slaps by definition, based on that quote, are meritorious. The problem with that is that academic paper was before any judicial determinations of what is or what is not slap could have been decided because it was on the basis of that academic research at the University of Colorado, primarily, that the state of California passed the first anti-slap statute. So basically, they were doing empirical investigation. They had a definition that they thought a slap fit or search criteria. And then they went out and searched a database of cases. And based on those inclusion criteria, they said, OK, we're going to analyze these cases. And out of those, the majority were decided in favor of the defendant. But some of them basically were false positives. This should not be a surprise in an empirical investigation. And it certainly shouldn't lead to the conclusion that a slap is not meritless by definition. And I think the Sandholm court alludes to that fairly strongly for two reasons. One, it frequently, in the language of the Sandholm decision, states that a slap is a merit or a meritless slap. It predicates the word slap with meritless throughout the decision. There's also the background that the Sandholm court— Can I just ask? Sorry. So did Sandholm explicitly apply the meritless and retaliatory test? They did not. They did not. The first appellate district was— Well, they were applying a test that they had actually already developed a proto version of, actually prior to Sandholm. That decision came out, I believe, the year before, in which they did apply this objective-subjective second prong. And it was in the light of that decision that Sandholm was decided. And you can look at that two ways, reading the tea leaves. Sandholm didn't explicitly adopt that. But they also didn't explicitly reject it. And then for the last, I believe, 12, 13 years, prior to the decision that's on review today, that has been the interpretation that has guided courts in determining whether or not a case should be dismissed under the Citizens Participation Act. Where did the fourth district go wrong when they deviated from Sandholm? I think it's primarily—I think it's primarily that they failed to provide—one's a practical objection. One is an interpretation objection. The interpretation objection is they read Sandholm as stating something it didn't state, namely that some slaps are meritorious. It didn't state that. It cited, too, an academic study, as I've stated already. The second point is a practical one. The fourth appellate district, I think, was doing the same work—I call it a primrose path—that other courts have gone down, both in the anti-slap context but also in the anti-trust context. We've seen courts try to apply a purely subjective test looking at the intent of the litigant. What is the true intent of the litigant? And in those, most importantly or most pointedly, the Massachusetts court has recently gone down this path in their decisions regarding their own anti-slap statute, where this court in Sandholm favorably cited to—apologize, I forget the name of the case— the Massachusetts Supreme Court decision, which did utilize a merits-based analysis, an objective component. But in the intervening years, the appellate courts in Massachusetts have done what the fourth appellate district did here and tried to craft a more subjective look at whether or not something is or is not a slap, whether or not the intent of the plaintiff is retaliatory or not. As I put it, what's at the true heart of the case or the reason for the case? Are they just trying to use lawfare, basically? And the Massachusetts Supreme Court most recently said, look, this isn't workable. We're going back to the—excuse me—the DuraCraft analysis framework, which does involve an objective component. So we can—the fourth appellate district was doing something that can theoretically be done, but when you get into the practicalities of getting into an analysis of the intent of the plaintiff on essentially a cold record, in most circumstances, the Citizens Participation Act is very clear. It pauses. It pauses all discovery. Without leave of court, you can't do more discovery. It's a very quick turnaround. It's 90 days. So we could be at the pleading posture, and we're supposed to have essentially a mini-trial as to what was the true intent of the petitioning partner— excuse me, the plaintiff. That's a very difficult position to put a plaintiff in who may have a meritorious claim and may be seeking redress of wrongs. Mr. Clark, is there any instance where a plaintiff with a meritorious claim can nonetheless constitute a slap so that it's subject to dismissal? I don't think so. I think if— By definition, if you have a meritorious claim, the slap defense fails. I think so. That is my— So then turning to the second element, how are you supposed to establish that? I know Ryan talked about the timing and the damages, but those seem to be poor indicia of the intent behind suing. Just because somebody sues immediately as opposed to later, just because someone seeks large damages, it doesn't seem like a strong fit. I understand and can acknowledge the concern there. I've had those same concerns. Basically what the first appellate district was looking at was what is a prototypical slap and then applying those types of criteria. But the fourth appellate did point out, and I think it's a well-pointed critique, that it really just encourages plaintiffs to become better at drafting their complaint. So it states not millions of dollars, but states $50,000 or whatever. So what is it that was alleged here by the defendant when they filed their motion under the Citizens Participation Act? What facts were alleged? They alleged a handful of facts. Did they allege that your client admitted to the defendant or third parties that the only reason you brought this suit was to retaliate against the defendant? They did allege that Mr. Anderson had stated that one of the reasons he brought it was because of the immunized speech to the law enforcement officer. That's primarily what they focused on. Mr. Anderson, as was pointed out, this wasn't before this court, but what was pointed out both before the fourth appellate and, of course, in the underlying case, is that he clarified his answer that he actually was damaged. He needed to revive his reputation. This all resulted in him getting a reduction in his contract rights from the Farm Bureau and its arm concerning the pork producers. So it had real consequences to him, and it wasn't just the statements to law enforcement that he was responding to, but also the statements she made to others in the group, the anti-CAPO group that was there that day, as well as others who were present that he worked with. So that was essentially the allegation that they made, is that because he stated, in part, he was upset about her making the complaint to law enforcement because that had all of these downstream effects, as well as the downstream effects from the other statements. To your point, Justice, the question about whether or not it's judiciable to figure out what the subjective element is, I don't think the fourth appellate district's decision helps us much in that regard for one very glaring reason, which was pointed out to me by opposing counsel, there isn't an evidentiary standard supplied by the fourth appellate district. I am at a complete loss as to what proofs the moving party has to bring. Is it a threshold? Is it a prima facie case? It doesn't actually state. It references the language of threshold from prior decisions, but doesn't actually incorporate it, and it doesn't state what proofs the non-moving party, the plaintiff, has to bring forward to contradict those allegations. So at a minimum, this court has to, even if the court adopts the fourth appellate district's analysis, which I'm not asking the court to do, but if it does, there's got to be further guidance, because I don't even know, as the trial attorney here, what to argue to as far as who has the burden of proof, what proofs have to be provided. So I think that in and of itself needs to be clarified at a minimum. Now, of course, we're not advancing that position, but it shows that we have clarity issues and judicial issues. But to your point, the amendment to the statute, to the extent it provides any kind of tea leaf reading, basically does away with this concern. We're no longer concerned with the sole intent of the plaintiff. They only have to show that there's some intent with this amendment. With that, Justices, I thank you for your time, and I'll reserve the rest of my time for rebuttal. Thank you. Thank you, Counsel. Thank you. Is the appellee ready to proceed? Please proceed, Counsel. Good morning, Mr. Chief Justice, and may it please the Court. In Sandholm v. Keeker, this Court adopted what it referred to as the traditional notion of a slap, as a meritless lawsuit intended to chill participation in government through delay, expense, and distraction. The Sandholm Court's references to the plaintiff's intent are ubiquitous throughout its opinion. Defining the slap inquiry is asking whether the plaintiff's intent in bringing suit is to recover damages for alleged defamation or, alternatively, to stifle or chill the defendant's exercise for First Amendment rights. Writing that a plaintiff's complaint genuinely seeks redress for damages from defamation or other intentional torts, the suit does not constitute a slap. Isn't merit a strong indicator of the plaintiff's intent? Justice Taylor, it's not, and I'll tell you why. Plaintiff's objective theory proposes that within the three-prong inquiry established by Sandholm, as interpreted by Corioso too, that actually at prong two, there are two sub-prongs. This is nowhere in the statute, and it's appeared nowhere in this Court or any of the public court's case law. At sort of sub-prong one, as we might call it, there's a merits inquiry that the plaintiff suggests is akin to a motion to dismiss or to a motion for summary judgment, and only then, if a defendant meets this merits threshold, can the Court then proceed to ask the only question, really, that the statute does propose, which is what is the plaintiff's genuine intent? Now, bear in mind that an anti-slap motion is a 619 motion, not a 615 motion. 615 in this Court and every appellate court to have dealt in the anti-slap context has consistently said this and said that a 619 motion is about immunity. It's not about merits. So my friend on the other side referenced a statistic that was mentioned in one paragraph of the Fourth District's decision below, which, frankly, though it works in our favor, did not form a substantial portion of the Fourth District's opinion. But they noted that there can be some divergence between slaps and meritorious suits. You know, the question of whether or not a suit is a slap and the question of whether or not it's meritorious are not one and the same. So my friend on the other side mentioned that something like 10 to 20 percent in some academic study of slaps were found to be meritorious. Well, the very explanation for that is that a slap is about immunity. It's about immunity under the First Amendment, not about the legal merits of the plaintiff's claim. Does that clarify your question? It does, but I think my colleague has a question. Mr. Mendenhall, the original motion to dismiss under the Act was brought pursuant to 2-619, and then subsequently you sought relief pursuant to a summary judgment motion. That's correct. And so was the appellate court wrong to analyze under 2-619 instead of summary judgment? The 619 standard is pervasive throughout every stage. Now, this is something that I believe has been mentioned by the First District in a footnote, and forgive me, I don't remember the case. But it hasn't been – the courts have not really had the occasion to wrestle with an instance of any divergence in the summary judgment standard or the 619 standard when a 619 argument is brought at the summary judgment stage. But I want to emphasize that a 619 argument, an anti-slap argument, should always be evaluated under the standard 619 standards and not a summary judgment standard because it is an immunity argument, not a legal merits argument. So are factual determinations and evidentiary hearings, such as the appellate court here has called for, is that contrary to or consistent with the 90-day period that the Act provides to resolve a motion? It's entirely consistent. And if I may just push back a bit on the suggestion in the appellate's brief that there's some difficulty of administrability or standardlessness in this kind of an inquiry, the standards are exactly the same as they always are. The standards are very familiar to appellate courts and to this court that at prong one and at prong two, the movement defendant bears the burden, and she bears it by preponderance of the evidence, and the burden shifts to the plaintiff to prove prong three by clear and convincing evidence. And the choice between an objective or a subjective standard at prong two in no way alters or even really implicates that framework. The framework remains the same. It's just a difference in the question being asked at prong two. So I'd like to stress that to the core question of this appeal, what standard of court should apply in evaluating a plaintiff's intent, Mr. Anderson provides really no answer. He simply proposes that this court divide prong two into these two sub-prongs, one of which is a legal merits inquiry that is not even permitted under a 619 motion. It's prohibited by the very nature of 619 motions, and it's redundant with already existing pretrial motions procedure. So plaintiff asks this court to adopt a test that can't be reconciled either with the statute or with its own precedent. So if I may, I don't want the court to come away with any misimpression that this case is about a stark division between the First District's precedent and the Fourth District's precedent. They're not one and the same. But there are substantial portions of the First District's jurisprudence on this question, including in Ryan v. Fox television stations, on which Mr. Anderson's briefing heavily relies, that actually support. So Mr. Mendenhoff, you put aside the merits part of the analysis that the Ryan case undertook, and then focus on the retaliatory aspect of the analysis. Isn't that just another way of talking about the true goal, which is what the Fourth District said drives these cases? We're using somewhat synonymous terms, the genuine intent or true goal. That's correct. So it is about whether or not the plaintiff's intent in bringing suit is truly retaliatory in its underlying purpose, or whether the purpose is to secure a genuine relief. And, Justice Gilley, you mentioned moments ago that the Ryan court sets out these, it mentions these two factors that it borrows from its own previous, from the First District's previous case in Hytel. And it says Hytel was wrong because we evaluated an anti-slap motion as a 615 merits motion. It says Sandholm has corrected us on that, so we're evaluating it as an immunity question. And here are two factors that Hytel got right in interrogating that genuine intent at prong two. As you mentioned, they are the proximity in time between the expressive activity complained of and the plaintiff's bringing of suit, and the amount of controversy in its relation to any demonstrable damages incurred as a result of that expressive activity. Now, those kinds of factors have absolutely nothing to do with the legal merits of the plaintiff's claim. They are clearly calculated to interrogate the plaintiff's genuine intent in bringing suit. Well, I'll get back to my first question then. I mean, it would seem to me that if the claim has absolutely no merit, that that would be strong indicia of what the plaintiff's intent is. So it could certainly be considered as a factor. I don't mean to suggest that a consideration of, you know, that a plainly meritless or frivolous lawsuit, the bringing of a frivolous lawsuit doesn't give occasion for some scrutiny. But the divergence here is between a merits suit and an immunity argument. The plaintiff already has 615 motions at his disposal. He can move to dismiss or failure to state a claim under law. That already existed. What the legislature added through the CPA was something different, and we shouldn't presume that it intended simply to double down on already existing pretrial motions procedures by providing simply a third occasion to interrogate the legal merits of the plaintiff's claim. What it says, what it asks, rather, in the statute, is whether the plaintiff's claim is based on, related to, or in response to the defendant's expressive activity. And that language has not changed in the new amendments. That language remains in place. So to the extent that, you know, the new amendments to the statute could be interpreted as, you know, as guidance towards the legislature's intent here, this Court, in Sandholm and in Glorioso too, and all the appellate courts have understood, pronged to, in this three-prong framework, to arise from the based on, related to, or in response to language. And that hasn't changed. So the fundamental question asked by the statute is, is the plaintiff bringing this for the purpose of retaliating against expressive activity by the defendant? So, counsel, you disagree that a SLAP claim cannot be a claim that has merit? To be clear, I would say that a suit that is subject to a SLAP may be meritorious. It may not be meritorious. The point is it's immune under 619. And let me ask you, as I asked opposing counsel, if we take the position that you're advocating for here today, what do we do next? What does our order look like in terms of next steps? Simply affirming the 4th District's approach, which, again, I differ with my friend on the other side, to the extent that there's any difficulty of administrability, workability, standardlessness, and so forth, in the 4th District's opinion. I believe that the 4th District pretty well spells out exactly what the circuit court does. So would we remand it in order for the circuit court to apply the standard that the 4th District says applies? And you may correct me here, but I believe that you would remand to the 4th District with directions to send it back to the circuit court to apply this genuine incentive. So that new standard, or the standard that the 4th District has to be applied at the circuit court level. That's correct. And if opposing counsel were to succeed here today, what does it look like? I believe, as my friend on the other side said, the case would go to trial then. The slap issue having been disposed of. That's correct. It's a pretrial motion intended to avoid what we have here, which is 8 years of litigation. Would you acknowledge that your burden as a defendant in bringing this type of motion is a heavy one? I think it's no heavier nor lighter than the burden than it has been in the past. But you have to have some facts. That's absolutely right. You're setting out to show that the real intent here is to burden your right to publicly participate rather than seek genuine relief for a wrong, right? That would seem to be a hard thing to show, approval. Because I'm afraid, just to be clear, which prong we're talking about. My friend and I on the other side, we're in agreement that there's no dispute at prong one or prong three. And we're only looking at prong two.  That's another fact, Justice Taylor, that really works in the 4th District's and Ms. Anderson's favor on this, which is that this is not an especially defendant-friendly standard to look to genuine intent, to look to subjective intent here. I don't want the court... It's almost as though you need a smoking gun. Exactly. So this is going to be... It might be a rare occasion when evidence already exists. We believe that it does so exist in this case. But this is not going to be the kind of... To adopt a genuine intent standard will not be the kind of decision that will open the floodgates here to movements prevailing on anti-slap motions left and right. It simply means that at prong two, the movement would have to show that there is evidence, persuasive, some persuasive evidence. So what is the evidence here that you set out? To my recollection, statements by Mr. Anderson below in deposition. We've now gone through this case because the anti-slap motion was denied on an early 619 motion. What do you say in this deposition? I don't want to misquote anyone here, so I'm hesitant to paraphrase, but essentially that a portion of his purpose in bringing suit was retaliation. But isn't retaliation common to all lawsuits? Somebody's been wronged, they want to sue, they want redress. Isn't that retaliation? Well, redress is not retaliation, Justice Taylor. Redress is about demonstrating damages and being made whole. Retaliation is about taking it out on someone you perceive to be opposed to you and are frustrated with. Or seeking damages for defamation, for malicious prosecution. Right, so the dividing line here is between suits for the purpose of making the plaintiff whole and suits brought for the purpose of stifling, silencing, chilling a defendant's First Amendment-protected expressive activity. In this case, communication to a police officer. Is that satisfying, Justice Taylor? Go ahead with your argument. Okay. So, again, plaintiff's argument here that the genuineness of his intent in bringing suit is logically inseparable from the legal merits of his claim is baseless. As this Court well knows, from litigation both within and without the anti-SLAPP context, the idea that legal merit is a perfect predictor of genuineness of intent, or anyone's intent in bringing suit, simply doesn't hold up. Now, I will note that the new language, regardless of motive language, to the extent that the Court is interested in the amendments made to the statute, my friend on the other side suggested that the new language in the statute, regardless of motive, somehow obviates this inquiry at prong two. It does not. Regardless of motive is used later in the statute, but the language that gives rise to our inquiry at prong two is based on, related to, or in response to. That language has not been changed. It has not been amended. So what was amended actually was a contradiction of precedent that had interpreted the statute to mean solely based on, related to, or in response to. Should we be using the language from the amendment in any way in reaching our decision in this matter? No, Justice White, although it is informative of the legislature's intent, where case law had narrowed the interpretation of based on, related to, or in response to to mean solely based on, and the amendments broaden, or are clearly calculated to broaden the universe of cases that could be subject to an anti-slap motion by saying that retaliatory intent may be simply one among multiple motives that the plaintiff has, but if it is one, then the case may be subject to an anti-slap motion. And how do we get there in this case? Well, in this case we have, so I don't propose that the new statutory language should apply here. It's simply a correction that because if you want to take that as informative, that Mr. Anderson need not have brought suit solely for the purpose of retaliation, but where retaliation may be a substantial portion of his intent in bringing suit, a court can consider. If the court has no further questions, I'll see the remainder of my time. Thank you, counsel. Thank you. Counsel? Thank you. To my friend on the other side's point that retaliation and redress of wrongs are not the same thing, that while that's logically true, it strikes me that perhaps he has never worked with individual plaintiffs before who almost always, to a person, are quite aggrieved at the actions that they perceive as being a wrong against them. They are seeking justice. They are seeking more than just the damages that I think most practitioners of the law have had this conversation many times with individuals who have been physically harmed, have been disabled. It's an imperfect mechanism to provide them with damages. What they want is to be put back in the true position they were, and also, in most circumstances, to receive some form of justice or accountability for the individual who wronged them. So the point of all that is to say there is almost always a mixture of motives that a plaintiff has for bringing a lawsuit, and the idea that a plaintiff has to be essentially a bloodless automaton who only wants to receive pecuniary recompense for the perceived wrong just really belies a misunderstanding of what I think is human nature, which is a seeking of justice and retributive justice, quite frankly. We've codified that very concept into our criminal statutes, and to some degree, when it comes to certain statutes punitive in our civil code as well. So I am a bit confused on this, my friend on the other side's position that we should always, both that we should always analyze an anti, or excuse me, a CPA motion dismiss under the standard of 619, but conversely, the plaintiff, or excuse me, the moving party has a burden of a preponderance of the evidence. Those aren't consistent with one another. A 619 motion, which the First Appellate District has elucidated in the context of a CPA motion, makes clear that all of the presumptions are going to be in favor of the non-moving party. It's not just a presumption of the evidence. We're not just weighing evidence one against the other and seeing which one is more likely to be true. Now that seems to some degree to be what the Fourth Appellate District is advancing, although, again, I will reiterate this assertion that the Fourth Appellate District says, yes, presumption of the, or excuse me, preponderance of the evidence is the appropriate standard. It doesn't actually provide that, so it's unclear. It references malice, and as a standard, it references frivolous lawsuit standards, but, again, it doesn't actually provide us with an evidentiary standard that has to be met with contradictory evidence by the plaintiff. So I don't think you can square that circle, quite frankly. The further contention that, and the Fourth Appellate District made this argument as well, that the legislature wouldn't have passed the CPA if it provided essentially the same relief or a similar mechanism for relief as a motion under 619 or a motion for summary judgment, again, both of those provide essentially the same relief. The standards are slightly different as to how to resolve a motion under one of those two statutes, but they are very similar. They're more similar than not. What the CPA does is try to address the wrongs that an identified slap causes to the defendant. Namely, it costs them time. It costs them money. And the CPA, when you read it as a cohesive whole, remedies those wrongs by shifting the attorney's fees onto the plaintiff if the move-in is successful in their motion of dismissal to the CPA, and also it satisfies or helps with the time element because it stops all further proceedings without leave of court and for good cause shown and requires that the motion be heard within 90 days. And again, going to the practicalities of a lower court trying to get to the heart of not the case but the party who's bringing the case to the court, it is a task. I do not envy circuit courts. Not only do I not envy them, I think if we adopt that standard, if this court adopts that standard, we are going to have massively divergent outcomes. We're going to have identical facts, and the trier of fact is going to be in a very difficult position to accurately decide whether or not the true intent was to retaliate. Quite frankly, I don't know how you could resolve that on essentially a cold record, let alone in a case like this where we at least have depositions that the court could rely on. But if this is brought at the pleading stage and then attorney's fees and dismissal of the case is concluded based on the court's belief that the movement showed by a preponderance of the evidence, as my friend advanced, that the true intent was to retaliate, I truly do not know how a court is to actually reach that conclusion. Unless the court has any further questions to me, I will cede the rest of my time. Thank you. Thank you, counsel.  Case number. Case number 131734. Anderson versus Smith is taken under advisement as agenda number five. The court thanks the attorneys for their arguments.